May it please the Court, James D. Young on behalf of Appellant Scottsdale Insurance Company, I reserve one minute for rebuttal. Wow. Yes, that's granted if you can do it. This case is not about fashioning a remedy for a tragic accident. That issue's already been litigated and resolved in the underlying Solomon litigation. This case is about construing plain- How has it been resolved? There was a settlement after we have, after the, I believe in November of 2009. Okay. There was a settlement of the underlying action, so it's- Yes, yes. The widow against the- Against all of the appellees. The individual appellant. Yes. Okay. That has been resolved. This case is about construing the plain, clear, and unambiguous provisions of the law enforcement liability policy of insurance to determine whether there were coverage, a duty of indemnification under the policy for the underlying claim. The district court's decision boiled down to the following. The City of Easton bought insurance coverage for civil rights claims. The Solomon estate asserted civil rights claims. Thus, Scottsdale owes a duty of defense and indemnification to the appellees in the underlying litigation. In doing so, the district court failed to give effect to all of the provisions of the policy, especially failed to apply the employee's injury exclusion according to the expressed terms of the policy and rendered that exclusion as mere surplusage. Do we- Are you asking us to reverse or to vacate and remand for further consideration by the district court? Your Honor, I believe since it's a question of law, I believe that you can reverse. I don't feel that there's any need to vacate and remand. Although you're saying that there's- Well, you're saying there's policy language that's clear that wasn't observed rather than that he read the policy wrong. Is that right? Because you're not arguing there's any ambiguity here. There is no ambiguity, Your Honor. Basically, the district court looked at the common exclusion number seven, the workers' compensation exclusion, and it's undisputed, I think, on appeal that that particular exclusion precludes, in conjunction with the exclusivity provisions of the Workers' Compensation Act in Pennsylvania, precludes any pendent state law claims. I don't believe that there's any argument on appeal here. The workers' comp provision, it's curious to me. It says there's an exclusion for any obligation under a workers' comp law. Well, we're not talking about the fact that there's an obligation here. No one's made a workers' comp claim. You're asking for defense of litigation. It's a strange provision to my mind. It precludes coverage for claims that would be personal injury or bodily injury claims that would be covered by either the workers' compensation law or by disability law or unemployment compensation. Are you talking about sub-8 now? No, I'm talking about sub-7. Yeah, but I think that's a very curious provision. It doesn't say anything that would otherwise be covered by workers' comp. It says any obligation under, so that if someone makes a workers' comp claim and you're obligated to make it, you turn to your insurance company and they say, no, no, no, we're not going to pay on your behalf the workers' comp. There's a separate proceeding with respect to the workers' compensation claim under the workers' compensation policy. The city of Easton, through Scottsdale, only bought one form of coverage, law enforcement liability. That does not provide liability for any injury to an employee that would be covered by workers' comp. Common exclusion number 7. But I think where the rubber hits the highway here is exclusion number 8. And does that, that would, that course of employment exclusion, if we decided it the way you want us to decide it, that would make consideration of the workers' compensation one unnecessary? Well, no, it wouldn't render it unnecessary because I think you would construe the exclusion 7 in conjunction with the exclusivity provisions of the Pennsylvania Workers' Compensation Act. But why isn't 8 all you need? Well, 8 could be all that we need, yes. I think that's what Judge Shorten said. And, I mean, it might be superfluous if we follow what the district court judge said where he said the party, to him at least, it was clear that the parties intended that there be coverage for any civil rights violation without reference to the plain language of exclusion 8 or to the definition of personal injury. I think the district court's sole discussion of the interplay between the two was that he thought that exclusion 8 was limited to the workers' compensation context simply because it used the words arising out of and in the course of employment. And the reason that the exclusion 8 is important is that it specifically bars any coverage for a claim for personal injury. Personal injury under sub G of the definition includes civil rights claims. How about the issue of, you know, let's assume, for the sake of argument, that Easton is clearly excluded. How about the issue of employees of the insured? There is case law every which way on this issue with different policies and I don't know that PMA is controlling or LUCO is controlling. And how similar was the language of the policy in Brown and Root to the language of the policy we have here? My recollection is it's pretty similar. It's pretty similar, but what's almost virtually identical is the North Wales case that we had cited in our brief. Your Honor, if you look at the definition of insured, an insured is the city of Easton. An insured is also any full or part-time employee of the city of Easton. Right. Any elected or appointed official of the city of Easton. All of the appellees, except for the necessary part of the estate, are covered as an insured. The city argues that the individual appellees don't fall under that provision because they're not the employer. And they cite to the separation of insureds provision of that. But PMA, which is the Pennsylvania Supreme Court decision from 1967, is controlling on the issue. It's never been reversed. Yeah, but it's not the same fact pattern. Well, it's similar enough, Your Honor. Well, they don't talk about the definition of insured at all. But it was an omnibus insured's employee. An omnibus insured was sued by an employee of the named insured. And under PMA, they said that there was not, under the employee exclusion, there was not coverage. So that was a named employee. And that the separation of insured's provision could not alter that. But LUCA was more like our fact pattern and went the other way. The one thing that wasn't argued here that occurred to me was the difference between an insured and the insured. Because the provision 8 talks about employee of the insured. And whether you construe the insured to mean the named insured rather than anybody else who's brought into that umbrella. I don't know. Well, the named insured on the policy. I'm making the argument for you. What was the city of Easton. Getting back to this issue in terms of the individual appellees and whether that exclusion aid applies to them. There's certain things you have to keep in mind. First of all, they were sued in their official capacities under Kentucky v. Graham. That is a claim that's in essence a claim against the municipality that has appointed them or for which they are elected or they are employed. So it doesn't matter? There's a merger. I respect the appellee's argument because that is an issue. They were sued in official capacity. And that is in essence a claim against the city. It significantly undermines their argument. So it doesn't matter. So it doesn't matter whether they individually are covered or not because the city of Easton. I mean, whether they are excluded or not because the city of Easton is excluded. Well, that's one part of my argument. The other part of my argument is that the employee exclusion applies to them pursuant to the holding under the PMA case, which is already considered and rejected. The same arguments made them. Also, it isn't limited to an employer. It says or in any other capacity. So the individual employees and officials are insureds under the policy who are sued in an other capacity. That other capacity being that they are a state actor for purposes of Section 1983. So regardless of whether they are the employer, the other, and it's in the conjunctive, or in any other capacity. Well, if they weren't state actors, they couldn't be sued under Section 1983. I want to address this issue of the reasonable expectations of the insureds. I don't think that the appellees have pointed to any ambiguous provision of the policy. Also under the Senate report. What does this policy cover? Talking about the expectations of the insureds. Law enforcement liability activities. Generally, the types of claims, and I defend many of them under these policies, would be excessive force claims, false arrest, malicious prosecution, those types of things. What if malicious acts are excluded? Well. The exclusions are so broad, they seem to swallow up a lot of the coverage provisions. Well, if it weren't Alex Solman who was shot, if it were some officer from some other force who wasn't employed by the city of Easton who happened to be there, I would assume there would be coverage for that. Yes, so long as none of the other, as long as it wasn't an intentional shooting, a felony, things of those sorts. When you say that, by the way, I'm assuming the provision about indemnification for voluntary payments made to the family, the underlying civil action is settled. Yes, Your Honor. Is there a criminal action underlying? Not to the best of my knowledge, and nothing in this record indicates that. It's been a long time, and you would think that it's been almost five years. There was a homicide charge, though. There was? Yeah, I thought so. I don't believe so, Your Honor. There was a grand jury investigation, and it raised issues with respect to negligence and the operation of the police department, and it wasn't a good day for the city of Easton. So we're not dealing with that provision, then? I don't believe so, Your Honor. I mean, the district court judge didn't talk about it, but if there's no, if the injury didn't resolve from the commission of a felony, I'm assuming that that is just not at issue here. That is correct. Scottsdale would have no obligation to indemnify for that $50,000. Mr. Young? Yes. I want to ask you a question about one of the arguments that was posed by your opponent in the briefing. There's some argument that we should view this, I'm going to frame it the way I understand it and let Mr. Huber correct me, but I understand the argument to be something like this. This happened because there were no decent policies or training in place, and that's a wrong that existed before that very sad shot went off in the room, and that, therefore, this doesn't fall within the course of employment exception. It's really a wrong associated with the failure of the city to supervise, to manage, to train, to have decent policies. So it's not a course of employment injury at all. What's your response to that? Several responses, Your Honor. First of all, it's an occurrence-based policy, and the only occurrence was the shooting in March of 2005. To the extent that the underlying complaint to establish the predicate for the Monell claims and the supervisory liability claim cited the things that occurred before January 1, 2004, they predate Scottsdale's policy. To the extent that the officials sued Gallagher and Mittman, they were public officials, presumably covered under public officials' policy for that. Is your most important point the occurrence-based one, though? Yes, Your Honor. I do want to make a point quickly about the reasonable expectations of the insured. Under the Canal Insurance Company case from the Third Circuit based upon Maticon, the PA Superior Court case, the reasonable expectation of the insured's doctrine has been limited in recent years to where there was a non-commercial insured and the policy terms are not readily apparent, and where the non-commercial insured is deceived by an insurance agent. While the city and its insurance consultant are experienced purchasers of insurance, the policy exclusions were clear, unambiguous, and readily apparent in the policy, and the record is devoid of any evidence that the city was deceived by Scottsdale or any agent acting on the part of Scottsdale with respect to the presence of or the contents of these exclusions. In conclusion, the district court erred as a matter of law in failing to give effect to the clear, plain, and unambiguous policy exclusions. In accordance with the well-established case law, the district court should have found that there was no coverage under the Scottsdale policy for the underlying lawsuit. The March 10, 2009, order of the district court must be reversed, and summary judgment entered in favor of Scottsdale on its complaint for declaratory relief. Thank you, Your Honors. Thank you. Please, the court. I'm Attorney James Huber. I represent the city of Easton and defendants Mittman and Gallaher. Let me point out one thing that just by way of clarification, the underlying civil rights case has settled. Scottsdale participated in that settlement, both the negotiations and the ultimate resolution, so that did not occur without their knowledge. Indeed, they were part of it. I recognize that that's not part of the record before this court because it occurred since this case came up on appeal, but it is, I think, maybe relevant. The city of Easton purchased as comprehensive civil rights coverage to protect itself, to protect its citizens. They paid in 2005 a premium of $177,000 to be certain that they would not be sued and be caught without coverage. Well, wasn't it incumbent on them then to make sure that it covered and didn't cover just what they want? I mean, we're focused on specific language, and I guess the first question in my mind is, is it the case that if we look at Section 8, the course of employment, and interpret it the way your opponent says we should interpret it, that we don't ever have to think about or worry about the workers' compensation piece of this? Well, certainly he argues, yes, that either exclusion would eliminate the coverage. And I'm just looking for your legal position. Absolutely. If one were to accept their argument about what the course of employment exclusion means, as just a logical matter, would that mean you don't have to look at the workers' compensation piece, Section 7 piece? That's what they say. That's what they say. But my legal answer is, Your Honor asked counsel, is your fundamental point the question of occurrence? And his answer was, yes, that's what he said. Let me start at the same spot. Can I get an answer to my question, though? Because that's what he says doesn't answer my question. As a legal matter, if their interpretation of the course of employment provision is correct, does that mean that disposes of the case and there's no need to consider the workers' compensation exclusion? Yes. Okay. With only, and I apologize, I wasn't trying to duck the question. With only one other issue, which is, what about the individual defendants who are not the employers of Salman? Right. So that issue. The separation of insured is a different issue, I understand. Yes, yes. But in answer, Your Honor. We only get to the separation of insureds if we decide that the plain language of Exclusion 8, together with the policy definition of personal injury. Equally true. Yes. Equally true. Both logically are, I would respectfully agree with both. If you decide one, then you don't have to get to the other, and if you decide the employer liability piece the way they want to, you don't have to get the workers' comp. I agree with both those points. Now, if I can point. And let me back up. The concept of the insured and the employee of the insured, because the individuals are sued in an official capacity, why do we get, why would we arguably get to that issue? Because they were sued in both an individual and an official capacity. Both. They were sued in both? Yes, I believe I'm correct on that. I don't want to state that with 100% certainty. I would think that's right. But I thought that was correct. Thank you. Now, you can go to what you wanted to talk about. I'm sorry. I apologize. Let me start with the employee injury exclusion. The Scottsdale is wrong, number one, on the basis of an analysis of the language. Number two, it's wrong on the basis of the understanding of both parties. Both parties. And number three, it's wrong for public policy reasons as well. Let me start at the simplest level, which is if you look at the record, the record reflects that Scottsdale says that the employee injury exclusion was intended to be a workers' comp exclusion. Well, let's, you started with the language and then the intent and then policy. Let's start with the language. Okay. The, that goes back to what I said to Judge Jordan about occurrence. The starting point is what's the occurrence? They say the occurrence is the shooting. The occurrence vis-a-vis my clients can't conceivably be the shooting. Because if the only claim against my clients was there was a shooting, there could be no civil rights claim because there's no respondeat superior liability. But occurrence means an event. It is a specific event. And law enforcement wrongful act means any actual or alleged act, error, or omission, neglect, or breach of duty by the insured, which seems to me the civil rights, the lack of policy, while conducting law enforcement activities, which results in personal injury caused by an occurrence. An occurrence is an event. Now, why doesn't that claim fit squarely within, your claim fits squarely within law enforcement wrongful act? Because it was the breach of duty by the failure to have policies in place, et cetera, resulting in personal injury caused by an occurrence, i.e., the shooting. There is no question, and I agree fully, that the wrongful acts asserted against Easton and the former mayor are those wrongful acts. They're Monell claims. They are claims of supervisor liability. They're substantive due process claims. And they're not occurrences. They are the wrongful acts. They're not occurrences. I'm sorry? They're not occurrences. I would respectfully disagree there, Your Honor. These are the occurrences which give rise to the claim against my client. There could be no other. If he wasn't shot, then there's no causation. But the question, I've cited to this Court's opinion in Nationwide and to the Pennsylvania Supreme Court case of Pfeiffer. Both say in a case of a shooting, the question of whether or not there is an occurrence as it relates to a particular party is from the perspective of the insured. And from the perspective of the insured, the wrongful act in those cases was the allegation of negligence, despite the fact that there was an intentional shooting. And in this case, the wrongful acts against my clients are that they failed to have proper policies, et cetera, et cetera. In any event, don't we have to send this back? Because all the arguments on both sides have to do with aspects of this policy and the interpretation of this policy that Judge Sanchez didn't look at. I would respectfully disagree with that. And aren't we saying there's an ambiguity here? Because everybody's disagreeing about what this means. So I guess there's two. What I'm saying is that with respect to the case, this, as Judge Jordan pointed out in interpreting my brief, which I agreed with, this exclusion, which talks about in the course of employment and arising out of employment, could not conceivably, could not conceivably be related to Solman's employment. It couldn't be. Because, number one, the wrongful acts that my clients allegedly committed could have occurred years before. They could have occurred before Solman was ever a police officer. But they occurred to fruition when the gun goes off, right? I mean, I go back to Judge Rendell's question. It's an event. A failure to have a policy, how can you describe that as an event? It's an existing condition, but it's not an occurrence or an event, is it? It is. I mean, you walk in one day and say, there's no policy. That's the event today. It's just the way it is. It's not an event, is it? Well, it's actually a series of events or a series of failure to have events. I mean, I guess you'd argue, but I don't mean to be semantical when I say that. What I'm saying – Well, you don't have to be. That's the whole point. I mean, we're dealing with trying to figure out what those exact words mean and how do we put a construction on the word event or occurrence that fits with the legal argument you're making to us, which is that the failure to do something over a long course of time is an event or an occurrence. Well, I would respectfully argue that the cases focus on that. Now, the cases admittedly focus on the negligence. In those cases, there was a landlord, for example, in Nationwide, and there was a tenant who was murdered. Now, obviously, the tenant got murdered. That was an event. But the claim, the occurrence, according to this court, was focusing on the insured's situation, and there there was an allegation they were negligent, sort of a non-event, a failure to do something. Here the allegation is that there were constitutional infractions. But what I don't want to lose sight of is what's really important, which is the specific language of the exclusion requires for it to apply that this has to have arisen out of Solman's employment. If another police officer from a totally different municipality happened to be standing there, that day they were doing some kind of multiple training among multiple municipalities. If a different police officer happened to be standing there and he would have had a claim, clearly he would have, his widow would have had a claim for exactly the same things as my client got sued for, same infractions. But doesn't that really make his argument? I think what you just said, because it's an employer's liability exclusion. No, because it proves that the claim does not arise out of Solman's employment. It proves. How does it not arise out of it? The injury certainly does. He's in the room cleaning a gun as a consequence of him being a cop. Sure. Employed by Easton. He's a police officer employed by Easton cleaning his gun after a training exercise. Why else would he be in that room? That proves without any doubt that he was in the course of his employment. There's no question he was in the course of his employment. The exclusion has two parts. Arising out of. Course of employment and arising out of. Well, it's personal. May I respond? It's personal injury arising out of, not a claim arising out of. Personal injury to. Yeah, what the case law from this actually starting with the Pennsylvania Supreme Court and then this court says that arising out of has a definition. And that means causally connected to. Now, that has to be different than in the course of his employment. It has to mean something different. And here my point is that if it doesn't matter if a non-employee of Easton is there with respect to the injury and the claim that resulted, then how could it be arising out of his employment? It couldn't be. Because otherwise there would be no claim with respect to somebody else. Arising out of has to mean that there is a connection between his employment and what happened. And how is there not? How is there not that connection here? I'm employed as a judge. I go to a judicial conference and something happens to me. It's arising out of my employment. It's not, you know, it's training and it's learning having to do with my job and I'm doing my judicial function. It's arising. I don't know how you'd interpret it not to be. Again, I start with there's two different things. There's in the course of and there's arising out of. If your honor is at a judicial function, you're in the course of. Okay? But what happens if you fall through a hole in the floor? Does that arise out of your being there as a judge? No. You could have been there in any capacity. Isn't that exactly the way the cases interpret the course of employment discussion when they're talking about responding on superior liability? When they're discussing those things, unless you're absolutely clearly off on some frolicking detour of your own, all the stuff that happens while you're out there doing stuff associated with your employer is judged by the law to be in the course of your employment, isn't it? Well, in the worker's comp capacity, yes. But here you don't suddenly change. Well, I don't know. And maybe I'm driving, you know, from the airport to the hotel and there's an accident. Well, I don't think that's arising out of my employment. It's probably in the course of my employment because I'm in the midst of a conference. That's exactly my point. But the exclusion has both. We didn't write the exclusion. They're arguing this exclusion steals from us coverage that we bought. They wrote the exclusion. You bought the policy. Absolutely. Absolutely. You paid the money. And we bought the policy with the understanding that this was not an exclusion. Well, let me ask you a question about that understanding. You have references to what Mr. Lear thinks and what J.B. Robbins thinks. But why does what they think have any legal bearing here? Because it's a question of what's the intention of the parties. Right. And how does what they think show anything about what the parties thought? Well, number one, as I quoted, Scottsdale itself in responding to a document request, God bless you, Scottsdale itself says the same thing. And I cite to the actual language in the response to the request for production of documents. I can read it, but I won't waste the court's time. They say it. Secondly, Robbins was their agent. What Scottsdale says is relevant, but how is what third parties say relevant? Well, if the third party is an agent of Scottsdale speaking for Scottsdale, I would respectfully argue that then it is relevant. And Scottsdale itself says it. But don't we have – I mean, if you need to get to intent, then we're going beyond the language. We have to find an ambiguity. We've probably asked Sanchez to go back and do a do-over, taking testimony as to all these intent aspects. Is that what should happen? Because if we're getting to intent, we have to find ambiguity first, and then somebody's got to take some evidence on this. No, I tried to answer Judge Jordan's question. And that was the basis for my response. And I'm posing a different question. No, my argument respectfully is that by the express language, there was no arising out of Solman's employment. So we don't get to the expectations of the parties. Exactly. I agree. Any more than if Your Honor was in an automobile accident, that arose out of your position as a federal judge. Thank you. Thank you. Thank you very much. Mr. Young, one minute. I'll be brief. Arising out of an – Arising out of. Excuse me? I said you better address the arising out of in your one minute. I will, Your Honor. The case that we cite in our brief says it has to be causally connected to the employment. To my mind, that is but for the employment. But for his employment as a city police officer, Officer Solman wouldn't have been in that room unloading his weapon following training, which was directly related to arising out of and in the course and scope of his employment. The arising out of and course and scope of employment – in the course of employment and arising out of employment the way Mr. Huber has pressed. I believe this both falls under the ambit of causally connected to the employment. And he was acting in the course of his employment. And the injury, bodily injury, which is what the exclusion goes to, occurred arising out of his employment. What the city fails to look at is the or in any other capacity claim. That covers the supervised reliability claims. And they haven't distinguished that at all. They haven't even addressed that or in other capacity. I believe that that is dispositive as well. I think that the coverage determination can be made conclusively based on this record, based upon the clear and unambiguous provision of Exclusion 8. Thank you.